UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HECTOR SUAZO,

                              Plaintiff,

                    -v.-

BRYANT PROPERTIES 769 LLC,

                              Defendant.

---

21 Civ. 2996 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Before the Court is Defendant Bryant Properties 769 LLC's motion

pursuant to Federal Rule of Procedure 60(b) to vacate this Court's judgment,

entered on May 26, 2022, in favor of Plaintiff Hector Suazo and against

Defendant, for violations of the Fair Labor Standards Act (the "FLSA"), 29

U.S.C. §§ 201-219.  For the reasons set forth herein, the Court denies

Defendant's motion.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff has been a long-time resident at 769 Bryant Avenue, Bronx, New

York (the "Building").  (Rivlin Aff. ¶ 9).  While residing in the Building, Plaintiff

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in
connection with the instant motion.  The exhibits attached to the Affidavit of Aaron
Rivlin in Support of Defendant's Motion to Set Aside the Default Judgment ("Rivlin Aff.")
are referred to using the convention "Rivlin Aff., Ex. [ ]" (Dkt. #33-1).  For ease of
reference, Defendant's moving brief is referred to as "Def. Br." (Dkt. #33), and the
Declaration of Isaac Gutman attached thereto is referred to as "Gutman Decl." (Dkt.
#33-2); Plaintiff's brief in opposition is referred to as "Pl. Opp." (Dkt. #41); and
Defendant's reply brief is referred to as "Def. Reply" (Dkt. #42).

also served as a superintendent from approximately March 2016 to September 2019.  (Dkt. #1 (Complaint) ¶¶ 18, 46).

Defendant was incorporated as a New York limited liability company on June 11, 2018, specifically for the purpose of purchasing the Building from another entity, Bronx 769 Bryant Avenue, L.P., which purchase was successfully completed on July 26, 2018.  (Rivlin Aff., Ex. A).  Defendant's headquarters are located at 362 East Kennedy Boulevard, Lakewood, New Jersey, and the management office for the Building is located at 2990 Jerome Avenue, Bronx, New York.  (*Id.*, Ex. I; *see also* Gutman Decl. ¶ 3).  Defendant relates that, following the onset of the COVID-19 pandemic, its headquarters "was effectively closed with all personnel having been instructed to stay home and work remotely."  (Rivlin Aff. ¶ 11).  It was not until late 2022 or early 2023 that employees resumed their normal business activities and returned to the physical office.  (*Id.* ¶ 12).

## B.    Procedural History

On April 7, 2021, Plaintiff commenced this action against Defendant, asserting various claims, primarily for violations of federal and state labor laws stemming from unpaid overtime wages allegedly owed to Plaintiff for work performed between 2016 and 2019.  (*See generally* Complaint).  On May 14, 2021, Plaintiff served the Summons and Complaint on Defendant via service on the New York Secretary of State, Defendant's registered agent, pursuant to the process established by Section 303 of the New York Business Corporations Law.  (Dkt. #7 (Affidavit of Service)).  On September 22, 2021, after not

receiving a responsive pleading within the time limitations set forth under the Federal Rules of Civil Procedure, Plaintiff sent a default notice letter, containing a copy of the Complaint and Affidavit of Service, to Defendant's New Jersey headquarters; the letter advised Defendant of the existence of the lawsuit, indicated that Defendant's answer was overdue, and warned that further failure to appear might result in a default judgment. (Dkt. #25-5 (default notice letter)). That letter additionally informed Defendant that, absent outreach by September 29, 2021, Plaintiff would move for default. (*Id.*).

Hearing nothing from Defendant within the specified time frame, Plaintiff so moved, first obtaining a certificate of default on November 9, 2021 (Dkt. #16-17), and then filing a motion for a default judgment on March 2, 2022, along with an accompanying memorandum of law, declaration, and exhibits in support (Dkt. #22-25). On March 23, 2022, the Court issued an Order to Show Cause for Default Judgment in connection with Plaintiff's motion, setting a default judgment hearing on May 4, 2022. (Dkt. #26). Six days later, on March 29, 2022, Plaintiff served the Order to Show Cause, annexed affidavit, and exhibits (together, the "Default Judgment Papers") on Defendant via the New York Secretary of State. (Dkt. #27). Thereafter, on May 4, 2022, the Court held a hearing on the Order to Show Cause; Defendant failed to appear at the hearing. (May 4, 2022 Minute Entry; *see generally* Dkt. #29 (Transcript of May 4, 2022 hearing)).

At the May 4, 2022 hearing, the Court considered the Complaint and corresponding affidavit of service, the certificate of default, Plaintiff's motion for

default judgment, corresponding affidavits and damages calculations annexed to Plaintiff's motion, the September 2021 default notice letter sent to Defendant by Plaintiff's counsel, and Plaintiff's affidavit of service of the Default Judgment Papers. (Dkt. #29 at 2:9-14). Following Plaintiff's representation that he was not seeking default judgment on the age discrimination claims alleged in the Complaint and other tertiary claims, the Court entered default judgment on Plaintiff's first cause of action, for unpaid overtime pay under the FLSA. (*Id.* at 14:22-15:14). On May 26, 2022, the Court entered judgment in the matter and, upon consideration of Plaintiff's damages calculations, awarded damages in the amount of $152,850, representing the amount of unpaid overtime pay; attorneys' fees in the amount of $7,857.66; and costs in the amount of $506 (the "Default Judgment"). (Dkt. #28).

Defendant represents that it first became aware of the Default Judgment in or around May 2023, when Aaron Rivlin assumed the role of building manager for 769 Bryant Avenue. (Rivlin Aff. ¶ 13). As Rivlin explains, upon assumption of the role, "[he] was compelled to undertake a thorough examination of all matters related to the Building and examine the status of any open violations and/or any open matter that potentially had a negative impact on the [B]uilding." (*Id.*; *see also* Def. Br. 7 ("[Rivlin] discovered the affairs of the building to be in a chaotic state, with inadequate business records, unresolved violations, and numerous outstanding issues left unaddressed by the prior management.")). In conducting his investigation, Rivlin came across the Default Judgment. (Rivlin Aff. ¶ 14; Gutman Decl.

¶ 23).  And upon discovery thereof, Rivlin contacted staff at Defendant's New Jersey office, requesting copies of all correspondence having to do with the Building.  (Rivlin Aff. ¶ 15; Gutman Decl. ¶ 24).  Pursuant to Rivlin's request, on or about May 30, 2023, staff found a letter from the New York Department of State, enclosing the Default Judgment Papers, that Defendant had received in the mail "sometime in either late June [or] beginning of July, 2022."  (Rivlin Aff. ¶¶ 16-18; Gutman Decl. ¶ 26).  Upon discovery of the letter, Defendant retained counsel in August 2023, and moved to vacate the Default Judgment on August 23, 2023.  (Rivlin Aff. ¶¶ 21-22; *see also* Dkt. #32, 33).

## DISCUSSION

### A.  Applicable Law

Rule 60(b) of the Federal Rules of Civil Procedure provides for relief from a final judgment, order, or proceeding in the case of:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Defendant's motion invokes two of these circumstances, namely Rule 60(b)(1), governing "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6), contemplating "any other reason that justifies relief."  (Def. Br. 10).  The Court addresses the standard for each provision in turn.

In deciding whether relief under Rule 60(b)(1) is warranted, the Second Circuit has identified "four non-exclusive equitable factors that determine what sorts of neglect will be considered 'excusable.'" *William* v. *City of New York*, 727 F. App'x 30, 31 (2d Cir. 2018) (summary order) (internal quotation marks omitted and alteration adopted) (citing *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  Those four factors are: "[i] the danger of prejudice to the non-moving party; [ii] the length of the delay and its potential impact on judicial proceedings; [iii] the reason for the delay, including whether it was within the reasonable control of the movant; and [iv] whether the movant acted in good faith."  *See id.* (internal quotation marks omitted).  Of these four considerations, the Second Circuit has stated that the preeminent factor under the Rule 60(b)(1) inquiry is "the reason for the delay."  *Nastasi & Assocs., Inc.* v. *Bloomberg, L.P.*, No. 18 Civ. 12361 (JMF), 2020 WL 2555281, at *2 (S.D.N.Y. May 20, 2020) (citing *In re Enron Corp.*, 419 F.3d 115, 122-23 (2d Cir. 2005)).

Rule 60(b)(1) motions are also subject to time limitations.  Importantly, "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Tapper* v. *Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (quoting *Nemaizer* v. *Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).  To that end, Rule 60(c) requires all Rule 60(b) motions to be filed "within a reasonable time."  Fed. R. Civ. P. 60(c)(1).  For motions under Rule 60(b)(1), "that 'reasonable time' may not exceed one year."  *Kemp* v. *United States*, 596 U.S. 528, 533 (2022) (quoting Fed. R. Civ. P. 60(c)(1)).  Put bluntly by the Second Circuit, "[t]he one-

year limitation period for Rule 60(b)[(1)] motions is absolute." *Wang* v. *Int'l Bus. Machines Corp.*, 839 F. App'x 643, 646 (2d Cir. 2021) (summary order) (quoting *Martha Graham Sch. & Dance Found., Inc.* v. *Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006)).

Next, with respect to Rule 60(b)(6), a party must demonstrate that its "case[] … present[s] 'extraordinary circumstances,'" to merit an entitlement to relief. *Mandala* v. *NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023) (quoting *Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)). Of note, "Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Stevens* v. *Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *United States* v. *Cirami*, 535 F.2d 736, 740 (2d Cir. 1976)). "Thus, '[w]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed.'" *Mandala*, 88 F.4th at 359 (quoting *Klapprott* v. *United States*, 335 U.S. 601, 614 (1949)).

Ultimately, whether predicated on Rule 60(b)(1) or Rule 60(b)(6), "[t]he burden is on the moving party to demonstrate that it is entitled to relief, and courts generally require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Rep.*, 864 F.3d 172, 182 (2d Cir. 2017) (internal quotation marks omitted and alteration adopted). And when weighing the evidence, the Court must further reconcile those competing considerations

7

under Rule 60(b), namely that the rule "should be broadly construed to do

'substantial justice,' yet final judgments should not 'be lightly reopened.'"

*Nemaizer*, 793 F.2d at 61 (quoting *Seven Elves, Inc.* v. *Eskenazi*, 635 F.2d 396,

401 (5th Cir. 1981)).  With this guidance in mind, "a motion under [Rule 60(b)]

to vacate a judgment of dismissal is addressed to the sound discretion of the

trial court."  *Altman* v. *Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) (*per

curiam*).

## B.    Defendant Has Not Met Its Burden to Merit Relief Under Rule 60(b)

As previously noted, Defendant seeks relief from the Default Judgment

pursuant to Rules 60(b)(1) and 60(b)(6).  (Def. Br. 10).  First, Defendant

maintains that its "excusable neglect" permits vacatur of the judgment; it

sources this neglect to Defendant's transition to remote work and its erroneous

belief that there was a pandemic-related moratorium on all civil actions.  (*Id.* at

9).  Next, Defendant argues that setting aside the judgment is appropriate,

given that Defendant's default was not willful, Defendant has meritorious

defenses to the action, and Plaintiff would not be prejudiced by vacatur of the

judgment.  (*Id.*).  And as a more general argument, Defendant maintains that

the COVID-19 pandemic and its attendant business interruptions constitute

extraordinary circumstances that should excuse Defendant's default.  (*Id.* at

19; Def. Reply 5).  For the reasons set forth below, however, Defendant has not

met its burden to demonstrate that its motion is not time-barred or otherwise

untimely under the requirements of Rule 60(c).  And even assuming the motion

had been timely filed, Defendant has not established that its neglect should be

considered excusable under Rule 60(b)(1), or that extraordinary circumstances merit relief under Rule 60(b)(6).

### 1.    Defendant's Motion Under Rule 60(b)(1) Is Time-Barred

Two related questions about timeliness pursuant to Rule 60(c) must be resolved before the Court may consider the merits of Defendant's Rule 60(b)(1) motion.  First, the Court evaluates whether Defendant's motion is time-barred, *i.e.*, whether it was filed before or after the one-year cutoff set out in Fed. R. Civ. P. 60(c)(1).  Assuming the former, the Court must also consider whether Defendant's motion is timely, *i.e.*, whether it was "made within a reasonable time."  *Id.*; *see also Wyche* v. *Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019) (observing that a Rule 60(b)(1) motion "may be rejected as untimely if not made within a reasonable time even though the one-year period has not expired").  As set forth below, Defendant's motion cannot satisfy either prong of the analysis, and therefore must be denied.

As a threshold matter, Defendant's motion, filed August 23, 2023, was made almost one year and three months following the entry of the Default Judgment on May 26, 2022, which timeline Defendant concedes is correct. (Def. Br. 10; Def. Reply 7).  Still, Defendant maintains that the one-year period under Rule 60(c) should be measured from the August 23, 2022 entry of the abstract of judgment.  (*See* Def Br. 10; August 23, 2022 Minute Entry). Defendant's position is incorrect, as an abstract of judgment is simply "[a] copy or summary of a judgment that, when filed with the appropriate public office, creates a lien on the judgment debtor's nonexempt property."  *Abstract of*

*Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019).  And when time is measured properly, Defendant's motion comes in too late under "[t]he one-year limitation period for Rule 60(b) motions[, which period] is 'absolute.'"  *Martha Graham*, 466 F.3d at 100 (quoting *Warren* v. *Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)).

Nor do those cases on which Defendant relies dictate any different outcome on timeliness, as each case is distinguishable from the facts at hand. First, in *Baez* v. *RCO Restoration Corp.*, the issue of timeliness was presumably waived, as it was not raised by the parties in their motion to vacate, and was therefore not addressed by the court in ruling on the motion.  *See generally Baez* v. *RCO Restoration Corp.*, No. 20 Civ. 1066 (VSB), 2023 WL 5333962 (S.D.N.Y. Aug. 18, 2023).  Second, in both *Hong* v. *Mommy's Jamaican Mkt. Corp.*, No. 20 Civ. 9612 (LJL), Dkt. #37 (S.D.N.Y. Dec. 22, 2021) (slip op.), and *Del Villar* v. *Francois*, No. 19 Civ. 10891 (JMF), 2023 WL 4364181, at *1 (S.D.N.Y. July 6, 2023), the defendants' motions to vacate the default judgments were timely filed in less than two months and four months after the entry of the disputed judgments, respectively.  Third, in *Yi Cao* v. *Atami on 2nd Ave.*, the court vacated the default judgment, finding that defendants had not been properly served with the original summons and complaint.  No. 15 Civ. 5434 (PGG), 2022 WL 17583776, at *5-7 (S.D.N.Y. Dec. 12, 2022).  Here, however, "Defendant acknowledges that the Plaintiff's service upon the Department of State was technically proper."  (Def. Reply 5).  Accordingly,

Defendant has not proffered a valid reason for why its Rule 60(b)(1) motion should not be subject to the one-year bar of Rule 60(c).

Even assuming that Defendant's motion were not time-barred, which it is, it was also not filed within a reasonable time.  As a general matter, a request for relief under Rule 60(b) is unreasonable and will not be granted "where the applicant fails to move for relief promptly."  *Grace* v. *Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006).  In this case, Defendant admits that its employees "resumed their normal business activities and returned to the actual office … [in] late 2022." (Def. Br. 11).  At that time, roughly six months following the entry of the Default Judgment (and well within the window of Rule 60(c)), Defendant could have discovered the notices in the mail and promptly moved for relief.

Defendant did not do so.  Rather, Defendant only became aware of this lawsuit when it hired Rivlin in June 2023, who "discovered the affairs of the building to be in a chaotic state, with inadequate business records, unresolved violations, and numerous outstanding issues left unaddressed by the prior management," and who undertook an investigation accordingly.  (Def. Br. 7).  It was Rivlin's investigation, and not Defendant's review of its mail, that apparently uncovered the existence of the Default Judgment, prompting Rivlin to contact Defendant's New Jersey office, which thereafter located a copy of the Department of State's letter enclosing a copy of the Order to Show Cause in its backlog of mail.  (*Id.*).

Accepting this timeline as true, Defendant could have discovered the Default Judgment and timely moved for relief upon its late-2022 return to in-person operations.  Even generously measuring from January 2023, roughly eight months passed between when it was possible for Defendant to have discovered the Department of State's letter and moved for relief, and when Defendant actually did so.  This unexplained eight-month delay falls within the range of delays considered presumptively unreasonable under Rule 60.  *See, e.g.*, *Wyche*, 332 F.R.D. at 117 (collecting cases and finding movant's unexplained four-and-one-half month delay was unreasonable); *Barrett* v. *Loc. 804 Union (IBT)*, No. 18 Civ. 2046 (MKB), 2023 WL 4551686, at *5 (E.D.N.Y. July 14, 2023) (finding movant's unexplained ten-month delay was unreasonable).

Accordingly, Defendant's Rule 60(b)(1) motion, filed after an unreasonable delay and outside of the one-year period following the entry of judgment, comes up short of both the general and specific requirements of Rule 60(c), and therefore must be denied.[2]

---

[2]     Having no basis to argue that its motion was timely filed, Defendant instead maintains that "[t]he timeliness of [its] motion should not serve as a basis to deny [its] motion," and that the Court should "[i]nstead … analyze the relevant factors in determining whether such a default should be vacated."  (Def. Reply 7).  Defendant's formulation incorrectly attempts to invert the approach expressly established by Rule 60, under which timeliness is considered first, and only after finding in the affirmative may a court reach the merits of the motion.  *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) *must* be made within a reasonable time — and for [Rule 60(b)(1)] no more than a year after the entry of the judgment."); *see also Mandala* v. *NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023) ("Proper characterization of [a] Rule 60(b) motion is a threshold issue because … the two provisions are subject to different filing limitations." (citing Fed. R. Civ. P. 60(c)(1))); *Martha Graham Sch. & Dance Found., Inc.* v. *Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 101 (2d Cir. 2006) ("Because plaintiffs' [Rule 60(b)] motion … was untimely, [the court] need not reach the merits of that motion.").

### 2. Defendant Has Not Met Its Burden to Demonstrate Excusable Neglect

Even if the Court were to look past Defendant's untimeliness and consider the merits of its reasons for its failure to respond, the Court finds that Defendant has not established an entitlement to relief.  On this topic, Defendant advances arguments, and Plaintiff responds accordingly, under the broader three-factor framework that operates to guide the Court's exercise of discretion in ruling on any kind of motion under Rule 60(b).  (Def. Br. 11 (citing *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005) (holding that the exercise of discretion under Rule 60(b) is "guided by three principal factors: [i] whether the default was willful, [ii] whether the defendant demonstrates the existence of a meritorious defense, and [iii] whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." (internal quotation marks and citation omitted)))).

This general framework, however, is trumped by the more specific standard, described earlier in this Opinion, set forth by "[t]he Supreme Court [to] cabin[] district courts' discretion under Rule 60(b)(1)."  *William*, 727 F. App'x at 31 (citing *Pioneer*, 507 U.S. at 395).  Under this test, four factors "determine[] what sorts of neglect will be considered 'excusable,'" and are as follows:

> (i) the danger of prejudice to the non-moving party; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.

*Id.* (internal quotation marks omitted) (citing *Pioneer*, 507 U.S. at 395). The Second Circuit has instructed that to exercise discretion properly in considering a motion under Rule 60(b)(1), a district court must first determine whether a movant's neglect qualifies as "excusable" under the *Pioneer* factors, before it undertakes any additional analysis. *Williams*, 727 F. App'x at 31-32. What is more, the Second Circuit has advised that courts must "take[] a hard line in applying the *Pioneer* test." *In re Enron*, 419 F.3d at 122 (internal quotation marks omitted). With that guidance in mind, the Court construes the parties' arguments under the *Pioneer* factors, and ultimately finds that Defendant has not met its burden to establish that its neglect was excusable.

### a. Defendant Has Not Provided an Adequate Reason for Its Delay

"[T]he reason for the delay" is considered the "preeminent factor under the Rule 60(b)(1) inquiry," and the Court begins accordingly. *King* v. *City of New York*, No. 20 Civ. 8283 (PAC), 2021 WL 1856840, at *2 (S.D.N.Y. Apr. 6, 2021) (citing *Nastasi*, 2020 WL 2555281, at *2; *In re Enron*, 419 F.3d at 122-23). On this factor, Defendant proffers two justifications for its failure to receive the service of both the initial pleadings and the subsequent Order to Show Cause materials. First, Defendant represents that it did not monitor, open, or otherwise review its mail during the temporary closure of its office locations and the transition to remote work during the period from the beginning of the COVID-19 pandemic, from in or around March 2020, through late 2022. (Rivlin Aff. ¶¶ 11-12). Second, Defendant suggests that its failure to monitor its mail was exacerbated by its admittedly erroneous belief that there

was a statewide moratorium on the filing of all non-urgent lawsuits.  (Def. Br. 5 (arguing that Defendant's failure to respond to the initial summons and complaint was not willful, inasmuch as "Defendant's principals had no reason to fear missing service of legal documents due to a statewide moratorium in place during that time which Defendant mistakenly interpreted to include the commencement of new matters that were non-urgent in nature")).  Both arguments, however, come up significantly short of the mark to demonstrate good reason for the delay.

While it is undisputed that the COVID-19 pandemic caused significant disruption to daily life, the mere fact of the pandemic is insufficient justification for Defendant to have gone almost two years without reviewing its mail in any substantive way.  While many employees, including Defendant's, may have worked remotely during the height of the pandemic, the Court takes judicial notice of the fact that the United States Postal Service delivered the mail in-person throughout the pandemic, and Defendant could have arranged for mail forwarding or some other service to permit it to review its physical mail notwithstanding its office closure.  *See Delivering During the COVID-19 Pandemic: How the U.S. Postal Service Kept the Nation Connected*, U.S. POSTAL SVC. (Sept. 2022) (detailing the Postal Service's response to, and delivery operations during, the COVID-19 pandemic), available at https://about.usps.com/who/profile/history/pdf/delivering-during-COVID-19.pdf [https://perma.cc/N7JX-9V7K].  Moreover, Plaintiff was able to

transmit notice of the lawsuit via mail, suggesting that others were not so hampered in their operations as was Defendant.  (Dkt. #25-5).

Defendant's reliance on remote work as justification for the period of delay is further undercut by the fact that its employees returned to in-person work in late 2022, rendering Defendant's ability to discover the notices of this lawsuit and seek appropriate relief entirely within Defendant's control as of that point in time.  (Def. Br. 11).  As discussed above, had Defendant simply processed its pandemic-related backlog of mail in a prompt manner, it could have discovered the notices in the mail and promptly moved for relief at a time within the one-year window of Rule 60(c).  And more to the point, it is well-established that disorganization and backlog in mail "even in the face of the 'unique challenges' like the COVID-19 pandemic, constitute[] 'the struggles of everyday life, and are not compelling reasons under a Rule 60(b)(1) analysis.'" *1199SEIU United Healthcare Workers E.* v. *Alaris Health at Hamilton Park*, No. 22 Civ. 531 (LJL), 2022 WL 17251772, at *4 (S.D.N.Y. Nov. 28, 2022) (alteration adopted) (quoting *King*, 2021 WL 1856840, at *3 (finding, in part, that plaintiff's counsel's "inability to access her law office due to the COVID-19 pandemic" did not excuse counsel's failure to "stay abreast of filing deadlines and to monitor substantive developments in their case")).[3]  Accordingly, Defendant's position that its failure to receive service via the mail was justified

---

[3]     Nor can Defendant shift blame to the Building's prior management for the chaotic affairs, inadequate business records, unresolved violations, and other outstanding issues.  Defendant, as the purchaser, had a full opportunity to conduct due diligence of the Building, and is fully capable of seeking its own relief against the prior management for this, or other litigation implicated by the transaction.

by Defendant's broader failure to check its mail in any meaningful way from 2021 to at least late 2022, comes up far short of proving that Defendant's delay was neither willful nor due to circumstances beyond its control.

Defendant's attempt to justify its inattention to its mail as rooted in its belief that there was a statewide moratorium on all new, non-urgent legal actions is similarly unavailing.  For one, Defendant's opening and reply briefs provide absolutely no citations or specific detail regarding the factual underpinnings of its mistaken belief.  Additionally, while the Court takes judicial notice of the fact that there was, for a time, a statewide eviction moratorium in place, it would be implausible to believe that this measure extended to all lawsuits in the state of New York.  Indeed, the Court's own experience during the pandemic provides evidence that the exact opposite was the case — namely, that the judiciary instituted extraordinary measures to ensure that litigants maintained access to the courts notwithstanding the challenges of the pandemic.  *See The Southern District of New York Response to COVID-19 (Coronavirus)*, available at https://www.nysd.uscourts.gov/COVID-19-coronavirus [https://perma.cc/CJ4A-5EN3] (providing "[d]etails about current court operations and access," including notices from the court and standing orders); *see, e.g.*, *In re Coronavirus/COVID-19 Pandemic*, No. 20 Misc. 179 (CM) (S.D.N.Y. Apr. 1, 2020) (standing order permitting *pro se* litigants to file by email).

Even setting to one side Defendant's failure to substantiate its vague belief in a moratorium, the Court acknowledges that "in analyzing a Rule

17

60(b)(1) motion, '[the Second] Circuit has rather consistently refused to relieve a [party] of the burdens of a final judgment entered against [it] due to … ignorance of the law.'" *Long* v. *Carberry*, 151 F.R.D. 240, 242 (S.D.N.Y. 1993) (quoting *United States* v. *Cirami*, 535 F.2d 736, 739 (2d Cir. 1976)); *accord United States* v. *Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."). Put differently, "a litigant's unfamiliarity with the legal system or ignorance of the law cannot form the basis for relief under Rule 60(b)(1)." *Nash* v. *Bd. of Educ. of City of New York*, No. 99 Civ. 9611 (NRB), 2018 WL 2316337, at *4 (S.D.N.Y. May 8, 2018) (denying relief under Rule 60(b)(1) notwithstanding party's assertion that "he failed to make certain legal arguments because, as a *pro se* litigant, he failed to understand their legal significance" (citing *Nemaizer*, 793 F.2d at 62)).

Accordingly, the Court finds that Defendant has failed to provide sufficient explanation for the reason for its delay, the most significant factor as to whether neglect should be considered "excusable" under Rule 60(b)(1). *See In re Enron*, 419 F.3d at 123 ("[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." (quoting *Silivanch* v. *Celebrity Cruises, Inc.*, 333 F.3d 355, 367 n.7 (2d Cir. 2003))).

###### b.    The Remaining *Pioneer* Factors Do Not Support Vacatur

The remaining factors are likewise of no aid to Defendant. While Defendant maintains that Plaintiff would suffer no prejudice by vacatur of the

default judgment, Plaintiff strongly disagrees.  (*Compare* Def. Br. 18-19, *with* Pl. Opp. 5-6).  As Plaintiff notes, prejudice may arise where delay might "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunities for fraud and collusion."  (*See* Pl. Opp. 5-6 (quoting *Knox* v. *P.L.O.*, 248 F.R.D. 420, 429 (S.D.N.Y. 2008) (citing *Davis* v. *Musler*, 713 F.2d 907, 916 (2d Cir. 1983)))).  And as Plaintiff reasonably maintains, the shoddy business affairs of the Building, compounded by the passage of time, would present a steep uphill battle for Plaintiff in conducting discovery.  (*Id.*).  Defendant seemingly ignores this argument in reply, instead suggesting that "Plaintiff has not and may not allege any prejudice should this judgment be vacated because the motion to vacate was promptly filed upon learning of the existence of this judgment, and while Plaintiff obtained judgment in 2022, to date, Plaintiff has not sought its enforcement."  (Def. Reply 7).  These arguments hold no water.  As discussed above, while Defendant may have promptly filed its motion upon learning of the existence of the judgment, Defendant was unreasonably delayed in learning of the existence of the judgment in the first place.  As to Plaintiff's enforcement, *vel non*, of the judgment, such considerations lie with Plaintiff as the holder of the judgment, and Defendant provides no authority to suggest that delayed enforcement of a judgment is indicative of a lack of prejudice to the party holding the judgment.

The remaining factors — the duration of the delay and whether the movant acted in good faith — are neutral.  Beyond the inherent prejudice posed by the passage of time, and the specific considerations discussed above,

there is nothing about the roughly fourteen-month period between entry of the default judgment and Defendant's current motion that would seriously impact the proceedings.  Likewise, while Defendant's apathy with respect to its mail is not evidence of a good-faith attitude, it is not necessarily indicative of bad faith. Altogether, "[u]nder the 'Second Circuit's 'hard line' approach to applying *Pioneer*, 'which emphasizes the reason for the delay,'" Defendant has not met its burden to demonstrate by highly convincing evidence that its neglect was "excusable" under Rule 60(b)(1), especially given its failure to establish that its delay was due to circumstances truly outside of its control.  *Nastasi*, 2020 WL 2555281, at *2 (citing *In re Enron*, 419 F.3d at 122-23 ("While prejudice, length of delay, and good faith might have more relevance in a close case, the reason-for-delay factor will always be critical to the inquiry." (alteration adopted and citation omitted))).[4]

### 3. The COVID-19 Pandemic Does Not Entitle Defendant to Relief Under Rule 60(b)(6)

Defendant requests, in the alternative, that the Court vacate the Default Judgment under Rule 60(b)(6).[5]  Clause (6) of Rule 60(b) allows the court to

---

[4]     Defendant makes additional arguments that relief under Rule 60(b)(1) is appropriate, given it has meritorious defenses to Plaintiff's claims.  (Def. Br. 13-17).  These arguments, however, factor into the analysis only after Defendant has established that its neglect "[is] considered 'excusable'" within the plain meaning of the rule as applied through the four-factor *Pioneer* analysis.  *William* v. *City of New York*, 727 F. App'x 30, 31-32 (2d Cir. 2018) (summary order).  As Defendant has not done so, the Court need not reach the merits of Defendant's defenses, which merits the Court notes are vigorously disputed by Plaintiff.  (Pl. Opp. 4-5).

[5]     In its brief, Defendant refers to the Court's inherent powers to set aside judgments, but does not provide specific citations supporting the exact authority it seeks to invoke.  (Pl. Br. 10, 17; Def. Reply 4, 6).  Accordingly, the Court construes those references as invoking the catchall provision of Rule 60(b).

grant a party relief from a judgment for "any ... reason that justifies relief" other than the reasons set forth in clauses (1) through (5) of Rule 60(b).  Fed. R. Civ. P. 60(b).  Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule."  *Nemaizer*, 793 F.2d at 63 (citations omitted).

Here, Defendant maintains that relief under Rule 60(b)(6) is appropriate, as the extraordinary events of the global pandemic excuse its default.  Yet Defendant once again comes up short.  For one thing, while Rule 60(b)(6) does not implicate the same one-year time bar as Rule 60(b)(1), it is still subject to Rule 60(c)'s requirement that the motion be filed "within a reasonable time." Fed. R. Civ. P. 60(c).  Accordingly, the Court's finding that Defendant's motion was untimely for purposes of Rule 60(b)(1) applies with equal force to its finding that the motion would be untimely under Rule 60(b)(6).  More significantly, Defendant's motion is barred because it does not establish the extraordinary circumstances meriting relief.  Rather, and consistent with the reasons discussed above, the facts as presented by Defendant demonstrate that while the pandemic may have been an exacerbating factor, the real reasons for Defendant's default lie in its failure to attend to its mail in a timely manner and in the disorganized affairs of the Building.[6]  As these reasons lie in

---

[6]     While "acknowledg[ing] that the Plaintiff's service upon the Department of State was technically proper," Defendant also argues that judgment should be vacated due Defendant's unsupported belief that Plaintiff's decision to effect service in that manner

"the struggles of everyday life," rather than the circumstances of the pandemic, it follows that Defendant's motion more properly arises under Rule 60(b)(1). *See Alaris Health*, 2022 WL 17251772, at *4; *see also Mandala*, 88 F.4th at 359 ("[W]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed."). The Court therefore denies Defendant's alternative motion for relief under Rule 60(b)(6).

---

was evidence of Plaintiff's gamesmanship and desire to use the disruption of the pandemic to his gain. (Def. Reply 5; *see also* Def. Br. 5). It is well-established, however, that "the method of service provided in section [303] and utilized by [Plaintiff] was 'reasonably calculated' to notify [Defendant] of the institution of the suit, [and therefore] satisfied the requirements of due process." *Baker* v. *Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995). Moreover, courts applying New York law have further found that "[s]ervice was complete … when [the plaintiff] delivered the complaint and summons to the Secretary of State … regardless of whether [the defendant] received actual notice of the lawsuit." *Vega* v. *Trinity Realty Corp.*, No. 14 Civ. 7417 (RJS), 2021 WL 738693, at *5 (S.D.N.Y. Feb. 24, 2021) (collecting cases). Likewise, "[D]efendant's mere denial of receipt, in opposition, [is] insufficient to rebut the presumption of proper service created by service upon the Secretary of State." *NYCTL 2013-A Tr.* v. *Heights Houses Corp.*, 98 N.Y.S.3d 460, 461 (2d Dep't 2019)*.*

Defendant's self-serving argument that Plaintiff had actual knowledge that service of process would not actually reach Defendant does not suffice, given that it is not only vigorously disputed by Plaintiff (*see* Pl. Opp. 3-4), but also weakened by Defendant's acknowledgment of Plaintiff's limited facility with the English language, which likely interfered with his ability to appreciate Defendant's multi-location operating structure (Rivlin Decl. ¶ 26). Defendant's argument is only further undermined by the fact that on September 22, 2021, Plaintiff directly transmitted a letter via first class mail to Defendant's New Jersey headquarters with notice of the lawsuit and docket number, and of Plaintiff's intention to seek a default judgment. (Dkt. #25-5). Even if it had been the case that the Department of State was backed up in forwarding copies of legal process to registered companies, Plaintiff's additional direct letter notice suffices to establish that Defendant should have been aware of the lawsuit and impending default judgment by the latter half of September 2021, and well prior to the default judgment hearing on May 4, 2022. (*See id.*; May 4, 2022 Minute Entry; Dkt. #28, 29).

**CONCLUSION**

For the foregoing reasons, Defendant's motion to reopen the judgment in this matter is DENIED.  The Clerk of Court is directed to terminate the motions at docket numbers 32 and 33.

SO ORDERED.

Dated:      March 5, 2024
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge